UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOSEPH R. MCCALLISTER,

    Plaintiff,

v.                           Case No. 8:10-cv-2444-T-33MAP

JOHN E. POTTER,
Postmaster General
U.S. Postal Service,

    Defendant.
_____/

**ORDER**

This matter comes before the Court pursuant to Defendant's Motion for Summary Judgment (Doc. # 28), filed on September 14, 2012. Plaintiff filed a response in opposition to the Motion (Doc. # 31) on October 17, 2012. After due consideration and for the reasons that follow, Defendant's Motion for Summary Judgment is granted.

**I.  Factual Background**

The following undisputed, stipulated facts are taken from the parties' Joint Pretrial Statement. (Doc. # 34 at 4-11).

Joseph McCallister worked as a letter carrier for the United States Postal Service from August 12, 2000, until his removal in August 2008. Carroll Gleaton, Jr. served as McCallister's immediate supervisor from at least 2006 through the date of McCallister's removal. Michael McCullough served

as the Postmaster of the Ruskin, Florida Post Office where McCallister was employed, and Gleaton reported to McCullough.

Beginning in 2006, McCallister began to take unscheduled sick leave, including unscheduled sick leave on February 10, 23, and 24 (8 hrs. each). On March 2, 2006, Gleaton conducted an official discussion with McCallister about maintaining regular attendance. On March 27, 2006, McCallister was absent from scheduled overtime (8 hrs.) and had unscheduled sick leave on March 28, 2006 (8 hrs.) and April 7, 2006 (7.16 hrs.).

Gleaton conducted an investigative interview of McCallister's attendance on April 8, 2006, and McCallister was advised that he needed to be regular in attendance. On April 17, 2006, McCallister again had unscheduled sick leave (8 hrs.). Subsequently, on April 18, 2006, McCallister was issued a Letter of Warning for continued unsatisfactory attendance and absence from overtime resulting from McCallister's unscheduled absences in February, March, and April of 2006. McCallister was advised in the letter that "Postal employees are required to be in regular attendance and report to work as scheduled." (Doc. # 34 at 6).

Following the Letter of Warning, McCallister was absent with unscheduled sick leave on June 28, 2006 (8 hrs.), June

-2-

30, 2006 (5.31 hrs.), and August 2, 2006 (8 hrs.). On August 9, 2006, Gleaton conducted another investigative interview of McCallister regarding his unscheduled absences. McCallister acknowledged the prior Letter of Warning he had received and was advised that he could receive further discipline, including termination, if his attendance problems persisted. McCallister was again absent with unscheduled sick leave on August 30, 2006 (8 hrs.).

Gleaton conducted a third investigative interview with McCallister on September 20, 2006, regarding McCallister's attendance. McCallister acknowledged the prior official discussions, two prior investigative interviews, and Letter of Warning he had previously received for the same issue. McCallister indicated that he realized how serious the attendance issue was getting and acknowledged that he understood that termination was a possibility if the problem persisted.

On October 2, 2006, McCallister was issued a Notice of Seven Day No Time-Off Suspension for continued unsatisfactory attendance for the unscheduled absences in April, June, and August of 2006. McCallister subsequently filed a grievance from this seven day suspension, and on October 26, 2006, the suspension was reduced to another Letter of Warning.

McCallister had unscheduled sick leave on January 4, 19, and 22, 2007 (8 hrs. each).  On January 25, 2007, Gleaton conducted another investigative interview with McCallister regarding his attendance, and McCallister again acknowledged that the previous official discussions, investigative interviews, Letter of Warning and seven day suspension (which was reduced to another Letter of Warning) all resulted from his unscheduled absences.  McCallister again indicated that he realized the seriousness of the issues and acknowledged that he could be terminated if the problem continued.  McCallister was issued another Notice of Seven Day No Time-Off Suspension on January 31, 2007, for continued unsatisfactory attendance due to the unscheduled absences in January of 2007.

McCallister did not work from February 11, 2007, through April 30, 2007, and had unscheduled sick leave on July 27, 2007 (8 hrs.) and August 16, 2007 (8 hrs.).  McCallister had an unexcused tardiness of 1.32 hours on August 22, 2007, unscheduled sick leave on September 8, 2007 (8 hrs.), and was absent from scheduled overtime on September 10, 2007 (8 hrs.).

Once again, on September 12, 2007, Gleaton conducted an investigative interview with McCallister regarding his attendance during which McCallister indicated that he realized how serious the issue was.  At the meeting, Gleaton asked

McCallister, "Joe, you realize you are on track to lose your job, do you realize this?" to which McCallister responded "Yes." Id. at 8. Gleaton continued, "A fourteen day suspension is next then termination," to which McCallister responded, "Right, right." Id. On September 25, 2007, McCallister was issued a Notice of Fourteen Day No Time-Off Suspension for his continued unsatisfactory attendance and tardiness for the unscheduled absences in July, August, and September of 2007.

In addition to McCallister's attendance issues, Gleaton conducted investigative interviews with McCallister on September 13, 2007, September 22, 2007, and October 3, 2007, regarding McCallister's unsatisfactory performance in delivering mail. McCallister was issued a Letter of Warning for unsatisfactory performance in delivering mail on September 25, 2007.

On October 22, 2007, McCallister was issued a Notice of Removal, effective December 7, 2007, for unsatisfactory performance, improper conduct, and incomplete mail disposition. McCallister was then placed on emergency suspension from October 2007 through February 15, 2008. On February 15, 2008, after an arbitration hearing, McCallister's Notice of Removal was reduced to a fourteen day suspension.

-5-

McCallister then had unscheduled sick leave on May 7, 2008 (8 hrs.), and an unscheduled absence from scheduled overtime on May 19, 2008. On May 21, 2008, Gleaton conducted another investigative interview regarding McCallister's attendance, and McCallister again acknowledged the previous disciplinary measures he had experienced and indicated that he realized how serious the issue was.

On May 27, 2008, McCallister filed an EEOC Complaint based upon the initial removal action issued on October 22, 2007. The EEOC Complaint alleged that McCallister had been discriminated against based on his race.[1]

On July 1, 2, and 3, 2008, McCallister had unscheduled sick leave (24 hrs.). Following the scheduled July 4, 2008, holiday, McCallister had unscheduled sick leave on July 5, 2008 (8 hrs.). McCallister then had scheduled annual leave

---

[1] Although it is not included as an undisputed fact in the parties' joint pretrial statement, McCallister's EEOC Complaint states that he is African-American. (Doc. # 28-1 at 62). The EEOC's Final Agency Decision, entered on February 27, 2009, found that McCallister had not established a prima facie cause of action, but even assuming he could establish a prima facie case, the evidence showed that "rather than race, progressive discipline was the motivation for what happened to [McCallister]" such that McCallister could not establish the Postal Service's action were pretext for discrimination. (Doc. # 28-3 at 7, 13-16). Accordingly, the EEOC closed McCallister's complaint with a finding of no discrimination. Id. at 16.

from July 6 - 13, 2008, unscheduled sick leave on July 14 - 15, 2008 (16 hrs.), a scheduled day off on July 16, 2008, unscheduled sick leave from July 17 - 19, 2008 (24 hrs.), and a scheduled day off on July 20, 2008. McCallister did not work for twenty-two consecutive days during this period.

On July 23, 2008, Gleaton launched another investigative interview regarding McCallister's attendance. McCallister stated that he was "not feeling well" on July 1, 2, 3, and 5, 2008, but did not go to the doctor. McCallister had no documentation from a doctor for those days. At the time of the investigative interview, McCallister did not have acceptable documentation for his July 14 - 20, 2008, absences. When asked why he had unscheduled sick leave following a week of scheduled annual leave, McCallister replied that he "needed time to recuperate." McCallister eventually submitted medical documentation dated July 18, 2008, for his July 14 - 20, 2008, absences, although the documentation provided no diagnosis or prognosis.

Following the investigative interview, McCallister had a scheduled day off on July 24, 2008, then unscheduled sick leave on July 25 and 26, 2008 (16 hrs.), and again on July 31, 2008 (8 hrs.). On August 1, 2008, McCallister was issued a Notice of Removal, effective September 20, 2008, for continued

unsatisfactory attendance for the unscheduled absences in May and July of 2008. The Notice of Removal referred to the 88 hours of unscheduled sick leave taken by McCallister in the three month period prior to the issuance of the Notice of Removal, which did not include the additional 24 hours of unscheduled sick leave taken on July 25, 26, and 31, 2008. The Notice of Removal stated that McCallister's actions were inconsistent with Section 665.41 of the Employee and Labor Relations Manual, titled "Requirement of Regular Attendance," which provides that "Employees are required to be in regular attendance. Failure to be in regular attendance may result in disciplinary action, including removal from the Postal Service." (Doc. # 34 at 11). McCallister then took 21 days of unscheduled leave after the Notice of Removal was issued on August 1, 2008, and before September 20, 2008.

On October 7, 2008, McCallister filed a second EEOC Complaint, alleging that he was terminated from the Postal Service on August 1, 2008, in retaliation for filing the prior EEOC Complaint on October 22, 2007. (Doc. # 28-3 at 5, 25). The EEOC issued its Final Agency Decision on April 1, 2009, finding that although McCallister could likely establish a prima facie retaliation claim, he failed to establish that the Postal Service's legitimate, non-discriminatory reasons for

its actions were pretext for retaliation. Id. at 31. Specifically, the EEOC found that McCallister "failed to show by a preponderance of the evidence that he was discriminated against or that any of the agency's actions were motivated by discriminatory animus towards [McCallister's] protected class." Id. Accordingly, the EEOC closed the complaint with a finding of no discrimination. Id.

On November 1, 2010, McCallister filed his complaint in this Court, alleging retaliation in violation of Title VII of the Civil Rights Act of 1964. (Doc. # 1). The Postal Service's summary judgment motion is now before the Court.

## II. **Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742

(11th Cir. 1996)(citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995)(citing Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine

-10-

issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988)(citing Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)).

However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981), cert. denied, 456 U.S. 1010 (1982).

### III. **Analysis**

To establish a prima facie case of retaliation, McCallister must show that: (1) there was a statutorily protected activity; (2) an adverse employment action occurred; and (3) there was a causal link between the protected activity and the adverse employment action. Dixon v. Hallmark Cos., 627 F.3d 849, 856 (11th Cir. 2010).

A plaintiff claiming retaliation can prove his case through direct or circumstantial evidence, and if the plaintiff relies on circumstantial evidence, the Court applies the familiar McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), burden-shifting analysis. Under this analysis, if a plaintiff successfully establishes a prima facie case of

-11-

retaliation, the burden shifts to the employer to provide a legitimate, non-retaliatory reason for the adverse employment action. Whitby v. Sec'y for Dep't of Homeland Sec., No. 11-10861, 2012 WL 2504919, *2 (11th Cir. Jun. 28, 2012). The burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the reason the employer provides is a mere pretext for the prohibited retaliation. Id.

Here, McCallister has not provided any direct evidence of retaliation; thus, the McDonnell Douglas analysis applies. However, for the purposes of its summary judgment motion, the Postal Service assumes that McCallister can establish his prima facie case of retaliation and proceeds directly to meeting its burden of demonstrating a legitimate, non-retaliatory reason for its decision to terminate McCallister. Thus, the Court will also assume, without deciding, that McCallister has satisfied the prima facie elements of his claim.

### A. Legitimate, Non-Retaliatory Reason

To rebut the presumption created by McCallister's prima facie case, the Postal Service must provide a "legitimate, non-retaliatory reason for the challenged employment action." Morgan v. Orange Cnty., Fla., 477 F. App'x 625, 628 (11th Cir. 2012). However, "[t]his is a burden of production, not

persuasion." Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1331 (11th Cir. 1998). "[Defendant] must merely produce evidence that could allow a rational fact finder to conclude" its actions were not motivated by retaliatory animus. Id.

The Postal Service contends that its decision to terminate McCallister's employment was based on McCallister's failure to maintain regular attendance. (Doc. # 28 at 17). The Postal Service asserts that McCallister's "history of irregular and unsatisfactory attendance is significant and after his attendance did not improve over a 2 1/2 year period of counseling and progressive discipline, the [Postal Service] justifiably removed him from service." Id.

"Not being physically able to come to work when physical attendance is a requirement of one's job is a legitimate reason for an employer to take an adverse employment action against an employee." Anderson v. JP Morgan Chase & Co., 418 F. App'x 881, 884 (11th Cir. 2011). See Gilchrist v. Bolger, 733 F.2d 1551, 1553 (11th Cir. 1984)(concluding that the employer's explanation that it did not promote plaintiff because of her poor attendance record was a legitimate, nondiscriminatory reason). Given the significant factual history regarding McCallister's absences and disciplinary record detailed above, the Court finds that the Postal Service

has met its burden of providing a legitimate, non-retaliatory reason for its decision to terminate McCallister's employment.

### B.  **Pretext for Retaliation**

Under McDonnell Douglas, upon establishing a legitimate, non-retaliatory reason for its employment action, the presumption of retaliation is eliminated and the plaintiff "has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir. 2000)(citations omitted).  "A legitimate, [non-retaliatory] reason proffered by the employer is not a pretext for prohibited conduct unless it is shown that the reason was false and that the real reason was impermissible retaliation."  Worley v. City of Lilburn, 408 F. App'x 248, 251 (11th Cir. 2011).  "Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason."  Chapman, 229 F.3d at 1030.

McCallister has not produced any evidence to rebut the Postal Service's legitimate, non-retaliatory reason for firing

-14-

him. McCallister does not deny that he was repeatedly absent from scheduled work, that he received numerous disciplinary measures due to his poor attendance both before and after he filed his first EEOC Complaint, that the Postal Service's employee manual expressly states that regular attendance is required, that he was informed on numerous occasions of this regular attendance requirement, and that he was warned several times that termination was possible if his attendance did not improve.

Instead, in his one-page response to the Postal Service's summary judgment motion, McCallister states that "[t]he documentary evidence indicates [the existence of] more than 5 comparators with similar attendance issues which were not subject to discipline other than the most insignificant kind." (Doc. # 31). However, this bare-bones contention is insufficient to rebut the Postal Service's legitimate, non-retaliatory reason in numerous ways. First, McCallister does not provide or cite to any evidence in the record to support his contention and has not identified who these purported comparators are or how their circumstances may compare to McCallister's. The Eleventh Circuit has made clear that "[b]are and self-serving allegations" such as this "are inadequate to carry the plaintiff's burden on summary

-15-

judgment." <u>Shuler v. Bd. of Trs. of Univ. of Al.</u>, No. 11-11264, 2012 WL 2533524, *3 (11th Cir. Jul. 3, 2012)(citations omitted).

Next, even assuming that the comparators are the same as those analyzed by the EEOC during its investigation of both of McCallister's complaints, the Court notes that the EEOC determined that the purported comparators were not similarly-situated employees, and thus, could not support a claim of discrimination. (Doc. # 28-3). McCallister has provided no reason for the Court to conclude that its analysis of the issue as to those comparators would be any different. Finally, McCallister does not show how the mere existence of purported comparators, without more, establishes that the Postal Service's reason for McCallister's termination in this case was false and that retaliation was the real reason for his termination. Accordingly, this assertion is insufficient to establish pretext on the part of the Postal Service.

In his response, McCallister offers other conclusory statements which likewise fail to rebut the Postal Service's legitimate, non-retaliatory reason for terminating McCallister's employment. Specifically, McCallister argues that "the documentary evidence indicates that [he] followed all the rules and requirements of absence reportage," that "no

fraudulent use of sick leave was implied or expressed," and that "the state agency for unemployment benefits [found] that [his] removal from the Service was not for just cause." (Doc. # 31). However, even if these statements were true, McCallister does not explain how these statements necessarily establish that the Postal Service's action was in fact motivated by retaliatory intentions based on McCallister's filing of an EEOC complaint.

For example, even if McCallister had followed the rules and requirements regarding *reporting* his absences, this does not rebut the Postal Service's contention that McCallister was fired because of the sheer *quantity* of the unscheduled absences. Similarly, the fact that the Postal Service has not claimed that McCallister's use of sick leave was fraudulent does not establish that its proffered reason for terminating McCallister was false. Although the Postal Service does not concede that all of McCallister's absences were for actual illnesses, its reason for terminating McCallister was not based on the legitimacy of the excuses McCallister provided for his absences, but again, on the volume of absences and on McCallister's continual unsatisfactory performance in improving his attendance record.

Finally, McCallister's contention that "the state agency

-17-

for unemployment benefits [found] that [his] removal from the Service was not for just cause" (Doc. # 31) is insufficient to rebut the Postal Service's proffered legitimate, non-discriminatory reason for terminating McCallister. Again, McCallister does not provide any evidentiary basis for this assertion; thus, it is nothing more than a conclusory statement that does not meet the Postal Service's proffered legitimate, non-retaliatory reason "head on and rebut it." Chapman, 229 F.3d at 1030. Furthermore, even if the state agency for unemployment benefits had found that McCallister's removal was not for just cause, this does not mean that the actual cause for McCallister's removal was retaliation for filing an EEOC Complaint.

To survive summary judgment, McCallister must create a genuine issue of material fact both as to whether the Postal Service's proffered reason for his termination is false and as to whether retaliation was the real reason for his termination. He has done neither. Instead, McCallister has provided only conclusory allegations of pretext without supplying any specific evidence that would "allow a factfinder to disbelieve [the Postal Service's] proffered explanation for its actions." Combs v. Plantation Patterns, 106 F.3d 1519, 1532 (11th Cir. 1997). Although the Court is aware that

-18-

McCallister is proceeding in this action pro se, "a pro se litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment." Shuler, 2012 WL 2533524 at *3 (quoting Brown v. Crawford, 906 F.2d 667, 670 (11th Cir. 1990)). Again, bare and self-serving allegations, which are all that McCallister has offered in opposition to the Postal Service's motion, are inadequate to carry the plaintiff's burden on summary judgment. Id. Furthermore, McCallister's response consists of nothing more than a repetition of the conclusional allegations in his complaint, in which case "summary judgment is not only proper, but required." Morris, 663 F.2d at 1034.

Accordingly, for the reasons articulated herein, the Court finds that McCallister has not established any genuine dispute of material fact which would preclude summary judgment and finds that the Postal Service is entitled to summary judgment as a matter of law. The Postal Service's motion for summary judgment is granted accordingly.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant's Motion for Summary Judgment (Doc. # 28) is **GRANTED.**

(2)  The Clerk is directed to enter judgment in favor of Defendant and against Plaintiff and to close this case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>15th</u> day of November, 2012.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All Counsel and Parties of Record